**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America, | No. CV 08-1479-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. |  |
| Salt River Project Agricultural Improvement and Power District, |  |
| Defendant. |  |

This matter comes before the Court on Plaintiff United States of America's ("Plaintiff" or "the United States") unopposed Motion to Enter Consent Decree (Doc. # 9). The proposed Consent Decree would resolve all remaining claims of Plaintiff against Defendant Salt River Project Agricultural Improvement and Power District ("SRP" or "Defendant") for alleged violations of the Clean Air Act ("Act" or "CAA"), 42 U.S.C. § 7401 et seq., at its Coronado Generating Station ("CGS") located in St. Johns, Arizona.

**I.   BACKGROUND**

On August 12, 2008, the United States, on behalf of the Environmental Protection Agency ("EPA"), initiated a civil enforcement action against SRP by filing a Complaint concurrently with lodging the proposed Consent Decree. In the Complaint, the United States alleged that SRP failed to comply with the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-92; Title V of the Act, 42 U.S.C. §§ 7661-7661f;

1  and the Arizona State Implementation Plan. *See* Complaint ¶ 1. The United States alleged
2  that during the period 1998 through 2000, SRP modified, and thereafter operated, two coal-
3  fired electric generating units at CGS without first obtaining appropriate permits authorizing
4  the modification and subsequent operation of the units, and without installing and employing
5  the best available control technology ("BACT") to control emissions of $SO_2$, $NO_x$, and/or
6  particulate matter ("PM"), as the Act requires. *See* Complaint ¶¶ 2, 31, 32. The United
7  States further alleged that following the illegal modification of the two units, SRP failed to
8  comply with its obligations under Title V of the Act. *See* Complaint ¶ 36 (alleging that SRP
9  failed to identify all applicable requirements, accurately certify compliance with such
10 requirements, and submit a compliance plan for all applicable requirements, including the
11 requirement to meet BACT pursuant to a BACT determination under the PSD program).
12     SRP denies that it was in violation of the New Source Review Provisions of the Clean
13 Air Act. After undertaking a careful and informed assessment of the costs and risks
14 associated with litigating the case, however, SRP determined that it was in its best interests
15 to agree to the proposed Consent Decree.
16     Pursuant to 28 C.F.R. § 50.7, the United States sought public comment regarding the
17 proposed settlement by publishing a notice in the Federal Register on August 15, 2008. The
18 Federal Register notice specified where to locate a copy of the proposed Consent Decree and
19 the manner in which the public should provide comment to the United States regarding the
20 settlement. The United States agreed to accept public comment on the proposed Consent
21 Decree for a thirty day period. The United States did not receive any comments regarding
22 the proposed Consent Decree.
23     On September 18, 2008, the United States moved the Court to enter the Consent
24 Decree. (Doc. #9.) SRP filed a Memorandum in support of the United States' Motion to
25 Enter Proposed Consent Decree on September 29, 2008, agreeing with the Motion to Enter
26 Consent Decree and supporting memorandum filed by the United States. (Doc. #11.)
27
28

The proposed Consent Decree includes, inter alia, injunctive relief, civil penalties, and mandated participation in various environmental projects. Specifically, the proposed Consent Decree requires: (1) the installation and continuous operation of new state-of-the-art pollution control technology to significantly reduce $SO_2$ and $NO_x$ emissions, (2) compliance with stringent $SO_2$ and $NO_x$ emission limitations, (3) use of best management practices for existing $SO_2$ controls and optimization of existing PM controls to further minimize $SO_2$ and PM emissions shortly after entry of the Consent Decree, and (4) installation of PM monitoring equipment. The proposed Consent Decree further requires SRP to pay a $950,000 civil penalty in addition to expending $4 million to implement three environmental projects including the Clean Diesel School Bus Retrofit Project, the Solar Photovoltaic Project, and the Wood Stove Changeout Project. The Consent Decree also requires SRP to surrender annually certain $SO_2$ allowances allocated to CGS as well as incorporate the Consent Decree requirements into both a federally enforceable permit and CGS's Title V permit.

## II.   ANALYSIS

This Court notes its function in reviewing a proposed Consent Decree is not to substitute its own judgment for that of the parties to the decree but to ensure that the terms of the decree are fair, adequate, reasonable, and consistent with the law. *See, e.g., SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984), citing *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1219 (1984); *see also United States v. State of Oregon*, 913 F.2d 576, 580-81 (9th Cir. 1990)(citations omitted). "A consent decree is essentially a settlement agreement subject to continued judicial policing. It is not a decision on the merits . . ., but is the product of negotiation and compromise." *State of Oregon*, 913 F.2d at 580 (citations and internal quotations omitted). Thus, the court's duty when approving a consent decree is fundamentally different from its duty in trying a case on the merits. Specifically, its duty is to satisfy itself of the settlement's "overall fairness to beneficiaries and consistency with the public interest." *Citizens for a Better Environment*, 718 F.2d at 1126 (citation and internal quotations omitted).

1        There is a presumption in favor of the decree's enforceability when the voluntary 2 settlement has the approval of the governmental agency charged with enforcing the statutes 3 relevant to the matter. *See Randolph*, 736 F.2d at 529 (reversing district court for abuse of 4 discretion and stating that "courts should pay deference to the judgment of the government 5 agency which has negotiated and submitted the proposed judgment"); *see also, United States* 6 *v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991)(citation omitted) 7 ("presumption in favor of voluntary settlement . . . is particularly strong where a consent 8 decree has been negotiated by the Department of Justice on behalf of a federal administrative 9 agency like EPA which enjoys substantial expertise in the environmental field"); *United* 10 *States v. Montgomery*, Case No. 2:05-CV-131, 2007 U.S. Dist. LEXIS 44980, *3 (W.D. 11 Mich. June 21, 2007), quoting *Kelley v. Thomas Solvent Co.*, 790 F. Supp. 731, 735 (W.D. 12 Mich. 1991)("There is perhaps a presumption of enforceability when the governmental 13 agencies charged with enforcing the environmental statutes worked toward and approve of 14 the consent decree."); *U.S. v. Rohm & Haas Co.*, 721 F. Supp 666, 681 (D. N.J. 15 1989)(presumption of validity attaches to settlement negotiated by federal agency charged 16 with its enforcement).

17        Having reviewed the proposed Consent Decree in the present case, the Court finds the 18 decree is fair, reasonable, in the public interest and also consistent with the goals of the Clean 19 Air Act. The settlement is the product of open, arm's length negotiations between the United 20 States and SRP, and representatives of the state of Arizona's Department of Environmental 21 Quality were invited to participate in the negotiating sessions. The EPA complied with its 22 statutory obligation to provide the state of Arizona with notice, and the public was afforded 23 the opportunity to comment on the proposed settlement. The agreement was negotiated by 24 the Department of Justice with input from the EPA – an agency with substantial technical 25 expertise in the environmental field and a statutory mandate to enforce the Clean Air Act. 26 There has been no public comment much less opposition to the proposed Consent Decree.

1  While the settlement agreement meets the requisites for fairness, the Consent Decree
2  is also reasonable, in the public interest, and consistent with the goals of the Clean Air Act.
3  The injunctive relief secured by the Consent Decree squarely addresses the nature of the
4  hazards alleged in this matter. The settlement embodied in the proposed Consent Decree
5  seeks to ameliorate the harmful effects of air pollution posed to human health and the
6  environment by the designated pollutants by reducing the emissions of sulfur dioxide ("$SO_2$")
7  and nitrogen dioxide ("$NO_x$") from the two coal-fired electric generating units at CGS. The
8  Consent Decree is, therefore, in the public interest and consistent with the underlying
9  purpose of the Clean Air Act – to protect and enhance the quality of the Nation's air
10 resources so as to promote the public health and welfare.

11  The Court also considers the value of the Consent Decree in avoiding complex,
12 protracted, and expensive litigation. Given the delays, costs, and uncertainties inherent in
13 the type of litigation implicated here, the benefits secured through this settlement further
14 demonstrate that the Consent Decree is fair and reasonable. *See Randolph*, 736 F.2d at 529-
15 530 (noting that even a strong case proceeding to trial is costly and prevents the allocation
16 of limited resources to other matters).

17  Accordingly,

18  **IT IS HEREBY ORDERED** granting the United States' unopposed Motion to Enter
19 Consent Decree (Doc. #9). Consent Decree to follow.

20  DATED this 19th day of December, 2008.

James A. Teilborg
United States District Judge